## Frank Halfrich v. State.

165 So. 285.
Opinion Filed January 14, 1936.

*C. E. Farrington,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Ira A. Hutchison,* Assistant, for the State.

BUFORD, J.—In this case plaintiff in error was indicted charged with the offense of murder in the first degree and convicted of that offense by a jury with recommendation to mercy.

Counsel presents five questions to us:

The first of these questions challenges the procedure by which the defendant in the court below was placed on trial. The record shows that on the 13th of October, 1934, the following proceedings were had:

"The State Attorney and the defendant in person and represented by Hon. C. E. Farrington being present in open court, thereupon the defendant was duly arraigned and plead 'Not Guilty.' It is ordered that the above entitled cause be set for trial October 29th, A. D. 1934, at ten o'clock in the forenoon thereof; the Court will permit the defendant to withdraw his plea of not guilty entered herein for the purpose of filing motion to quash or other pleadings desired to said indictment, provided such application is made within one week from this date."

On the 20th day of October, 1934, the defendant filed his motion to quash which was overruled and denied on the 29th day of October, 1934.

The record shows the following:

"The State Attorney and the defendant in person, and represented by Hon. C. E. Farrington, Attorney, being present in open court, the defendant having been duly arraigned and entered his plea of not guilty on the 13th day of October, A. D. 1934,. to the charge of the indictment on

file against him. The motion of the defendant to quash the indictment herein filed on the 20th day of October, A. D. 1934, was denied in open court in the words and figures following, to-wit:

"IN THE CIRCUIT COURT OF THE TWENTY-SECOND JUDICIAL CIRCUIT OF FLORIDA, IN AND FOR BROWARD COUNTY, STATE OF FLORIDA, Plaintiff, v. FRANK HALFRICH, Defendant.

"ORDER OVERRULING AND DENYING MOTION
TO QUASH INDICTMENT

"The above cause coming on to be heard upon the Motion to quash Indictment filed in said cause, and the Court having duly considered same:

"IT IS THEREFORE, ORDERED that the said Motion to quash Indictment, and each and every ground thereof, be OVERRULED and DENIED.

"Done in open Court this the 29th day of October, A. D. 1934.

"GEO. W. TEDDER,
*"Judge of the above syled Court.*

"Thereupon by order of the court came a jury of twelve (12) good and lawful men, to-wit:"

The record further shows that after the State had rested its case the defendant was duly sworn and testified in his own behalf and thereupon by his counsel announced that he would rest his case. Both parties announced they would close their case. Thereupon the cause was ordered continued until the 30th day of October, 1934, at 9:30 o'clock in the forenoon thereof.

The record does not show that the plea of Not Guilty was ever withdrawn by the defendant and even if such showing appeared in the record, we think that the opinion

and judgment in the case of Padgett, *et al.*, v. State, 117 Fla. 75, 157 Sou. 186, is controlling here and that no reversible error occurred.

The second question presented is as follows:

"2. In this case, should the Court have granted Defendant's Motion for a New Trial on either one or more of the following grounds: (1) Because the verdict of the jury is not supported by the evidence. (2) Because in arriving at a verdict the jury acted through mistake and/or prejudice?"

We have carefully considered the evidence as disclosed by the record and find it amply sufficient to support the verdict. There is nothing in the record to indicate that the verdict of the jury was the result of mistake or prejudice. The third question is as follows:

"3. Should the Court have granted Defendant's Motion for a New Trial because, over the objection of defendant, O. R. Biggs, was permitted to relate in evidence a statement made to him by Ruth Ferrell, her statement not being made to witness in the presence of the defendant?"

Reference to the testimony of Biggs discloses the following: Biggs was put on the stand as a State's Witness and being questioned by the State Attorney, Mr. Maire, testified as follows:

"On the 6th day of September, 1934, I lived between 24th and 25th Streets on the Miami Road. I knew Mr. Frank Halfrich before that date. I just knew his wife when I saw her. I saw or knew of trouble that occurred near my home at that time. I heard a woman scream, went out on the front porch and saw two men running down the road. I knew one of them. I knew one of them, Frank Halfrich. He was behind the other man. They ran about 40 yards after I saw them. I didn't see anything

after they disappeared behind the house. I didn't hear them say anything, not to distinguish the words. I went down where I saw them going after Ruth Ferrell came and asked me to. When I got down there I saw Frank Halfrich starting to drive away with his wife in the back seat. I didn't hear Mr. Halfrich say anything to his wife, or to anyone. I didn't hear his wife say anything to him at that time. I saw his wife had her arm with a handkerchief tied over her elbow, or some place and blood running out of her arm. I stated that Ruth Ferrell made a statement to me at my house.

"Whereupon the following proceedings were had:

"Q. What did she say to you Mr. Biggs?

"Mr. Harrington: We object, if the Court please, unless the defendant was present.

"Mr. Maire: Part of the *res gestae*.

"The Court: Q. How close is your house to Frank Halfrich's house, Mr. Biggs?

"A. I should judge it is twice the length of this court room.

"Q. After you heard the first scream, how long was it before Ruth Ferrell came over to your place?

"A. I can't say exactly but it was two or three minutes afterwards maybe a little more.

"Q. What had become of Frank and the other man at that time?

"A. I had seen them running down the road and disappear behind another house that sits sixty or seventy feet from my house.

"Q. And you say it wasn't more than two or three minutes after you heard the scream that Ruth came over?

"A. It might have been a little more but not much more than that.

"Q. About how long was it after you had last seen the two men going down the road?

"A. Until when?

"Q. When Ruth came over?

"A. Maybe half a minute or a minute afterwards.

"The Court: Objection overruled.

"Mr. Farrington: Note my exception.

"The Court: Exception noted.

"By Mr. Maire: Q. All right, Mr. Biggs, what did she say to you?

"A. I was standing in the backdoor looking down the road towards where these men disappeared and she came up and said 'For God's sake run down there and stop him' and I said 'Stop what'? and she said 'He is killing that man and his wife.' I said 'Who is killing a man and his wife?' and she said, 'Frank Halfrich,' she said, 'Frank.'

"By Mr. Farrington: "Now we move to strike the testimony of the witness on the ground that it is improper for the purpose admitted in that it is not a part of the *res gestae* and is prejudicial to the defendant and was not said in his presence.

"The Court: Motion denied.

"Mr. Farrington: Note my exception.

"The Court: Exception noted."

It is a close question as to whether or not the matters testified about by Mr. Biggs constituted a part of the *res gestae*. It may be said that usually statements made by third persons not produced as witnesses are objectionable as hearsay. Underhills Criminal Evidence, 4th Ed., 354, Sec. 192. But it has also been held that exclamations uttered by bystanders before or during the commission of the homicide are admissible. See Kennedy v. Commonwealth, 30 Ky. Law, 1063, 100 S. W. 242; U. S. v. Schneider, 21

D. C. 381; Parsons v. State, 43 Ga. 197; Barrow v. State, 80 Ga. 191, 5 S. E. 64; State v. Moore, 38 La. Ann. 66; State v. Walker, 78 Mo. 380; State v. Kaiser, 124 Mo. 651, 28 S. W. 181. The contrary appears to be held in French v. Commonwealth, 7 Ky. Law Rep. 747; Commonwealth v. James, 99 Mass. 438, Flynn v. State, 43 Ark. 289.

The record shows that the witness Ruth Ferrell was put on the stand as a witness for the State and testified that she went to Mr. Biggs and told him to go down and see what was being done.

The record does not show that she either affirmed or denied that she made the statement which Biggs attributed to her.

Considering all the circumstances, we must hold that the alleged statement of Ruth Ferrell to Biggs was not a part of the *res gestae,* because, if made at all, it was not made at the scene of the homicide, nor in the sight of, nor in the hearing of, either the accused or the victim of the assault. It does not appear to have been a spontaneous statement, but, if made at all, it was a statement made after reflection and for the purpose of procuring assistance in preventing the occurrence of the homicide, which the record shows was then taking place outside of the range of vision or hearing either of the speaker or the person spoken to.

We hold, however, that the admission of this evidence did not constitute reversible error because the record shows that there was nothing in that testimony which could prejudice the defendant in view of all the facts and circumstances properly admitted in evidence. That Miss Ferrell told Mr. Biggs that the defendant was killing that man and his wife added nothing to the strength of the State's case and took nothing from defendant's case. According to defendant's testimony, that was exactly what he was

doing at the time the statement was made by Miss Ferrell and the fact that Miss Ferrell said at that time to a third party.that he, the defendant, was doing that could not possibly be of any consequence or in any way prejudice the defendant.

The fourth question is as follows:

"4. Should the Court have granted Defendant's Motion for a New Trial because one or more of the Court's instructions in his general charge to the jury were misstatements of the law as aplied to the facts and evidence in this case, and because they tended to confuse and mislead the jury?"

We have considered the charges of the Court and we find in them nothing misleading. It is true the record shows that the Court charged the jury as to the law of self defense when there was no claim of self-defense, but we cannot see that this was prejudicial to the defendant. This is necessarily true because a homicide is justifiable when committed in the lawful defense of the person who commits the homicide. Sec. 5033 R. G. S., 7135 C. G. L. Manslaughter is defined as follows:

"The killing of a human being by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide nor murder, according to the provisions of this Article, shall be deemed manslaughter, and shall be punished by imprisonment in the State prison not exceeding twenty years, or imprisonment in the county jail not exceeding one year, or by fine not exceeding five thousand dollars." Sec. 5039 R. G. S., 7141 C. G. L.

Under an indictment for murder in the first degree the accused may be convicted of any degree of unlawful homicide, including manslaughter. Therefore, it is generally

proper in homicide cases for the Court to define each degree of unlawful homicide, including manslaughter; and when defining manslaughter, it is always proper for the Court to instruct the jury what constitutes justifiable and excusable homicide under our statutes, so that the jury may be advised as to what is meant by the language "justifiable homicide" as used in the definition of manslaughter.

The charges were all entirely fair and except for a part of the following charge, which we shall underscore, the principles of law involved are correctly stated. The charge referred to is as follows:

"The defendant in every criminal case is presumed to be innocent until the State has by competent evidence shown his guilt to the exclusion of and beyond a reasonable doubt, and before this presumption of innocence leaves the defendant every material allegation of the indictment must be proven by the evidence to the conclusion of and beyond a reasonable doubt, and this presumption of innocence accompanies and abides with the defendant as to each and every material allegation in the indictment, through each stage of the trial, until it has been so met and overcome by the evidence to the exclusion of and beyond a reasonable doubt, and if any one of the material allegations of the indictment is not proven to the exclusion of and beyond a reasonable doubt, you must give him the benefit of such doubt, and acquit him, *or reduce the grade of the offense as the facts as you find them from the evidence may require.*"

The verdict of the jury was a conviction of the offense of murder in the first degree with recommendation to mercy and, therefore, that the above quoted charge did not contain the instruction that "if the jury found that the evidence did not warrant a conviction of murder in the first degree then.

it must be convinced beyond a reasonable doubt of the defendant's guilt of any lower degree of unlawful homicide before it can find him guilty of such lower degree of unlawful homicide," could have had no harmful consequences.

The fifth question is stated as follows:

"5. Should the Court have granted defendant's Motion for a New Trial because the Court erroneously denied one or more of defendant's special requested charges?"

We have considered the special instructions requested by the defendant and find that those refused had either been covered by the special charge given by the Court or else did not state correct principles of law. Therefore, there was no reversible error in the refusal to give such charges.

For the reasons stated, the judgment should be affirmed.

It is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.