NIMMONS, Judge.
Youngblood appeals from a judgment and sentence for armed burglary of the dwelling of Jule Hussey as charged in the second count of the information.[1] He was also tried on three other counts as to which the jury was unable to reach a verdict, resulting in a mistrial as to those counts. The first count charged attempted first degree murder of Jule Hussey. The third count charged armed burglary of the dwelling of Robert A. Morgan. The fourth count charged burglary of the dwelling of Lawrence Vonderau and the commission of an assault in the course of committing such burglary.
The evidence presented by the state was essentially not disputed. On April 22, 1986 at about 8 P.M., Jule Hussey’s wife was washing dishes when she heard a gunshot outside. Appellant, who lived across the street, came to the back door and told her to call the police, that someone was after him with a gun. As she unlocked the door, appellant pushed it open and came inside. He stood in the dining room where Jule Hussey encountered him. Appellant was jumping around and was quite excited. He again asked that they call the police because somebody had a gun. He then ran into a bedroom and slammed the door. Appellant had a firearm and shot through two of the bedroom windows toward the street. Mr. Hussey opened the door at which time appellant pointed the gun at him. Hussey heard the gun click. Hussey then pushed appellant through the house and out the back door.
Appellant thereafter attempted to break into two other homes in the same neighborhood.[2] Off-duty officer Robert Morgan lived 10 or 12 houses from the Hussey home. He heard glass breaking at his front door. He saw appellant, who was holding a gun, trying to open the door. Morgan grabbed appellant’s arm and the gun fell to the floor. Appellant excitedly told Morgan that someone was trying to kill him. Morgan saw nobody on the street. Morgan grabbed the gun and told appellant to hold still. Appellant turned and left.
Appellant also attempted to break into the Vonderau home. Lawrence Vonderau saw appellant’s shoulder and head sticking through his front door. He opened the door and pushed appellant back down the steps. Appellant told Vonderau that appellant’s partner was trying to kill him. Von-derau testified that appellant wore pants and socks but no shirt or shoes, and that appellant looked high, or drunk, or crazy.
Appellant’s theory of defense was that he committed these crimes under duress or out of necessity. According to appellant, he and his son picked up Donald Travis after work. They purchased some beer and then drove to appellant’s house. Appellant and Travis sat in the living room drinking beer. Appellant left to go to the restroom. When he returned, he saw Travis and a man with a gun on the floor. He took the gun away and the man ran out the back door. Appellant ran out the front door to go to his neighbor’s house to call the police. He ran into a second man. They struggled and appellant was cut with a knife. Appellant fired a shot into the air and ran to the Hussey house to use the *404 telephone. He told Mr. and Mrs. Hussey that someone was shooting at him and to call the police. Appellant shot twice out of the bedroom windows. He ran out of the Hussey house and went to the other neighbors’ houses trying to get help.
Donald Travis was called as a defense witness. He testified that on the evening of April 22, appellant and his son picked Travis up after work. They purchased some beer and drove to appellant’s house. Travis went to the kitchen for some ice and heard a knock at the back door. He opened it and a man came in with a gun and told Travis to lie on the floor. Appellant came into the kitchen and disarmed the man. The man ran out the back door and appellant ran out the front door. Travis heard a shot and saw appellant tussling with a second man at the front door. Appellant ran across the street and Travis heard two more shots. Travis testified that he had earlier sold some rings to the two men whom he and appellant had encountered that evening. The rings were not worth what the men had paid.
At trial, appellant requested that the jury be instructed as follows:
If you find that the Defendant, WILLIE C. YOUNGBLOOD, committed the crime against his will because of circumstances which either constituted a real, imminent and impending danger to himself or to some loved one, or from which circumstances shown in evidence defendant had reasonable grounds to believe that such danger was real, imminent, and impending, and did so believe at the time the crime was committed and therefore committed the crime because of such belief, then you should find him not guilty of the offense of entering a dwelling, the property of Jule Hussey, with intent to commit an offense therein, towit: to commit an assault with a dangerous weapon, a pistol, while committing or attempting to commit burglary. If you have a reasonable doubt and find that the defendant, Willie C. Youngblood, acted reasonably you should find him not guilty of the offense of committing an assault with a dangerous weapon while committing or attempting to commit burglary.
The court ruled that the defendant was not entitled to the instruction and therefore denied the request.
The jury found appellant guilty of the Hussey burglary (count two), but was unable to reach verdicts on the other counts. On appeal, appellant challenges the trial court’s denial of his above requested instruction. We hold that the trial judge did not err in refusing to give such instruction.
The fatal flaw in the appellant’s position is that while the authorities might well support the proposition that a person who was experiencing the situation described by appellant would be justified in trespassing upon someone’s property in order to seek sanctuary from threatened injury, such person would not be justified in burglarizing such property. Critical to this distinction is the fact that the gravamen of burglary is the defendant’s intent to commit a crime within the premises — in the instant case, the crime of assault.
This is not the kind of case where a person has threatened to inflict bodily harm on the defendant if the latter does not commit a certain crime. Compare Koontz v. State, 204 So.2d 224 (Fla. 2nd DCA 1967) (threats upon defendant by gang members to commit robbery); Hall v. State, 136 Fla. 644, 187 So. 392, 408 (1939) (defendant allegedly coerced into committing perjury); Stevens v. State, 397 So.2d 324 (Fla. 5th DCA 1981) (threats upon defendant by his abductors to engage in extortion scheme); Corujo v. State, 424 So.2d 43 (Fla. 2nd DCA 1982).
The duress or necessity claimed by the appellant is closer to the line of cases which have recognized such a defense to the charge of escape from a penal institution. E.g. State v. Alcantaro, 407 So.2d 922 (Fla. 1st DCA 1981); Watford v. State, 353 So.2d 1263 (Fla. 1st DCA 1978). However, the rationale enunciated in those cases for the defense of duress or necessity—although arguably supportive of a defense to a charge of trespass— would not justify the commission of the kind of crime which the jury found the appellant to have committed, to wit: burglary.
*405 Appellant also claims — and the appellee agrees — that the trial court erred in assessing 15 points for “victim injury” on the sentencing guidelines scoresheet. Elimination of such points reduces the guidelines sentencing range by one cell. The sentence must therefore be reversed and the cause remanded for resentencing either within the guidelines range or outside such range in the event clear and convincing reasons are given therefor.
The judgment is affirmed but the sentence is reversed and the cause is remanded for resentencing in accordance with this opinion.
BARFIELD, J., concurs.
SHIVERS, J., concurs in part and dissents in part with written opinion.

. The second count charged that the defendant ... did unlawfully enter or remain in a structure, to-wit: a dwelling, the property of Jule Hussey, with the intent to commit an offense therein, to-wit: an assault, and was armed with a dangerous weapon, to wit: a pistol, and while committing or attempting to commit the aforementioned burglary the said
WILLIE C. YOUNGBLOOD had in his possession a firearm or destructive device, to-wit: a pistol, contrary to the provisions of Sections 810.02 and 775.087, Florida Statutes.

. These additional acts by appellant were the subjects of the other burglary charges in counts three and four.