917 So.2d 329 (2005)
Dale DRIGGERS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-3078.
District Court of Appeal of Florida, Fifth District.
December 23, 2005.
*330 James T. Miller, Jacksonville, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Timothy D. Wilson, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
Dale Driggers senselessly and wrongfully shot and injured one man and killed another simply because Driggers refused to comply with the dress code of the bar he entered, which required that he wear a shirt, pants, and shoes. Having been found guilty of manslaughter with a firearm for the death of Leonard Sullo and of aggravated battery with a firearm for the shooting of Carl Martin, Driggers appeals the judgment and sentences, complaining that the trial court erred in refusing to instruct the jury on duress as a defense and that the sentence imposed for the aggravated battery conviction was illegal because the information did not charge the provisions of the 10-20-Life statute found in section 775.087, Florida Statutes (2003).
When Driggers entered the Little Caesar's Bar around midnight wearing only shorts, he was informed by the bartender that he would have to don a shirt and shoes. Upon learning of the dress requirements, Driggers could have complied with the directive or simply left, but his truculence and disdain for rules not his own rendered him ill-disposed to be dictated to by anyone, and a bartender at that. Instead, he issued a directive of his own: "Let the biggest, baddest mother fucker in here make me put my shirt and shoes on." When Sullo, a patron in the bar, reiterated the need for proper attire, Driggers unexpectedly grabbed a beer mug off the bar and struck Sullo in the head, causing the mug to break. With the broken portion of the mug in his hand, Driggers thrust the broken glass into the throat of Sullo, causing him to bleed profusely. As Sullo's friend rendered aid to Sullo, the bartender put Driggers in a choke hold and attempted to restrain Driggers until the police arrived. Sullo came to his senses and, being displeased with Driggers, started to punch Driggers several times.
Driggers got loose and retreated outside, where he made his way to his car. Sullo pursued Driggers and was so incensed that he pounded the windows of Driggers' car and jumped on the hood, demanding that Driggers exit the vehicle and fight him fairly. When Sullo turned very white from blood loss and appeared to be on the verge of collapse, Sullo got off the car and started back towards the bar. As he did, Driggers got out of the car, opened the trunk, and obtained a gun. With his courage in hand, Driggers pursued the injured and weakened Sullo, who was slumped over with his hands on his knees. Larry Martin, who is apparently unrelated to Carl Martin, saw Driggers *331 with the gun and exclaimed, "He's got a gun. He's got a gun." Hearing this, Sullo started to run from his depraved assailant. Driggers chased Sullo, cursing at him as he fired the weapon several times. Carl Martin, a patron in the bar who had gone outside when the melee erupted, was placed in the line of fire when Sullo ran past him and was struck in the jaw and chest by stray bullets.
Driggers' pursuit of Sullo did not last long, as Sullo fell to the ground in the parking lot. In the ultimate act of cowardice, Driggers straddled Sullo's fallen body and fired several more shots into the unarmed Sullo as he lay on the ground pleading for his life.
Driggers told a rather different story in order to establish his theory of self-defense, but the verdict tells us that the jury did not believe him. Therefore, we will not dwell on his version of events. Rather, we will devote our efforts to resolving the issues he raises, beginning with his claim that the trial court erred in refusing to give the duress instruction.
The defense of duress derives from the common law and is encapsulated in Standard Jury Instruction (Criminal) 3.6(k). In essence, there are six elements that establish this defense: 1) the defendant reasonably believed that a danger or emergency existed that he did not intentionally cause; 2) the danger or emergency threatened significant harm to himself or a third person; 3) the threatened harm must have been real, imminent, and impending; 4) the defendant had no reasonable means to avoid the danger or emergency except by committing the crime; 5) the crime must have been committed out of duress to avoid the danger or emergency; and 6) the harm the defendant avoided outweighs the harm caused by committing the crime. Id.
Here, Driggers was charged with second-degree murder, but was convicted of voluntary manslaughter as a lesser included offense.[1] The courts generally agree that duress is not a defense to homicide.[2] *332 This general principle is founded on a choice of evils rationale incorporated in the sixth element aforementioned. This rationale essentially recognizes that the defense of duress is premised on the notion that the defendant should be excused for engaging in the criminal conduct because he chose the lesser of two evils confronting him. When the defendant takes the life of another based on a threat to his life or the life of a third person, the rationale evaporates because the defendant is unable to logically show that the decision to kill the victim, whose life was as worthy as the life of the defendant or threatened third person, was the lesser of two evil choices. See Hunt v. State, 753 So.2d 609, 613 (Fla. 5th DCA), review denied, 767 So.2d 457 (Fla.2000); Wright v. State, 402 So.2d 493, 498 (Fla. 3d DCA 1981) ("`Legal recognition of duress as a defense to crimes other than homicide necessarily assumes a working hypothesis that a harm or crime of greater magnitude is avoided when the subjected person succumbs to the duress. This hypothesis disappears when duress is sought to be invoked as a defense in a homicide case.'") (quoting Jackson v. State, 558 S.W.2d 816 (Mo.Ct.App.1977)); United States v. LaFleur, 971 F.2d 200, 205 (9th Cir.1991) ("The choice of evils rationale necessarily presumes that the threatened harm to the defendant is greater than the resulting harm from the defendant's commission of the crime. When the defendant commits murder under duress, the resulting harm  i.e. the death of an innocent person  is at least as great as the threatened harm  i.e. the death of the defendant."), cert. denied, 507 U.S. 924, 113 S.Ct. 1292, 122 L.Ed.2d 683 (1993).
Even if the law were otherwise, the trial court properly refused to give the duress instruction based on the facts and circumstances of this case. Generally, the defense of duress applies when "a person has threatened to inflict bodily harm on the defendant if the latter does not commit a certain crime." Youngblood v. State, 515 So.2d 402, 404 (Fla. 1st DCA 1987), review denied, 520 So.2d 587 (Fla.1988). For example, the defense may apply where gang members threatened harm to the defendant if he did not commit robbery of another person, see Koontz v. State, 204 So.2d 224 (Fla. 2d DCA 1967), or where threats are made by kidnappers to the defendant that he would be harmed if he did not engage in an extortion scheme to acquire from others money the defendant owed to his abductors, see Stevens v. State, 397 So.2d 324 (Fla. 5th DCA 1981). Here, there is no evidence that Sullo threatened harm to Driggers if he did not commit a crime. Rather, Driggers claims that the attack of Sullo against him while he was in the car gave rise to the defense of duress. We disagree. In this instance, self-defense was the appropriate charge to the jury and that instruction was given. Driggers' problem is that the jury did not believe that the defense was appropriate to *333 relieve him of criminal responsibility for Sullo's death. Moreover, Sullo, weakened from his wound, ceased his attack, got off the car, and was attempting to make his way back to the bar when Driggers retrieved the weapon. At that point, any threat of harm to Driggers had ceased and he was no longer in imminent or impending danger from Sullo. Additionally, Driggers could have left when Sullo retreated and, therefore, Driggers had reasonable means to avoid the danger.
Driggers advances the argument that it was error for the trial judge to refuse to give the duress instruction because the defense of duress was appropriate regarding the aggravated battery charge. It appears that Driggers is actually contending that Sullo provided the threat of harm that forced him to shoot Carl Martin, the innocent bystander who was struck by stray bullets. In other words, Driggers claims that he was coerced into shooting Martin by a threat of imminent death or serious bodily injury at the hands of Sullo. The illogic of this argument is readily apparent to us and we reject it. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to give the requested duress instruction. See Worley v. State, 848 So.2d 491 (Fla. 5th DCA 2003).
Turning to the sentencing error raised by Driggers, he claims that the trial court improperly imposed a mandatory minimum sentence of 25 years on the life sentence for the aggravated battery conviction pursuant to the 10-20-Life statute found in section 775.087, Florida Statutes. That statute provides that if a defendant is convicted of having committed any one of a list of violent felonies, including aggravated battery, and regardless of whether the use of a weapon is an element of the felony, the defendant shall be sentenced to a minimum prison term of 25 years if, in the course of the felony, the defendant discharged a firearm. The information in the instant case merely charged that in committing this offense, Driggers "used a rifle, a firearm and deadly weapon...." Driggers argues, and the State agrees, that because the information did not allege that he discharged the firearm, the sentence is error. Based on precedent from this court and others, we also agree. Koch v. State, 874 So.2d 606 (Fla. 5th DCA 2004); Altieri v. State, 835 So.2d 1181, 1183 (Fla. 4th DCA 2002) (holding that the 10-20-Life sentence was improperly imposed; stating, "The absence of any allegation in the information that appellant `discharged' a firearm during the aggravated assault deprived him of notice that he was subject to a mandatory minimum of twenty years. The jury's finding that he discharged a firearm during the course of the aggravated assault did not cure the defect in the information."); see also Whitehead v. State, 884 So.2d 139 (Fla. 2d DCA 2004); Bell v. State, 876 So.2d 712 (Fla. 4th DCA 2004).
We affirm Driggers' conviction for aggravated battery, but reverse the sentence imposed for that offense and remand for resentencing consistent with this opinion. We affirm Driggers' conviction for manslaughter with a firearm and the thirty-year prison sentence he received for that offense.
Regardless of the sentence on remand for the aggravated battery conviction, Driggers will have to spend a considerable amount of time in prison. Given his affinity for scant attire and his aversion for dress codes, we trust that Driggers is compliant with any rules adopted by the Department of Corrections regulating the clothing requirements of inmates and that he appears a little more dapper in his newly acquired prison garb.
*334 AFFIRMED in part, REVERSED in part, and REMANDED.
MONACO, J., concurs.
PALMER, J., concurs in result only.
NOTES
[1] Voluntary manslaughter falls within the category of homicide offenses. See Ch. 782, Fla. Stat. (2003) (entitled "Homicide" and including the manslaughter statute therein); Halfrich v. State, 122 Fla. 375, 165 So. 285, 288 (1936) ("[I]t is generally proper in homicide cases for the court to define each degree of unlawful homicide, including manslaughter...."); Folks v. State, 85 Fla. 238, 95 So. 619, 621-22 (1923) ("Manslaughter ... is a grade or degree of unlawful homicide.") (citation omitted); Boyett v. State, 69 Fla. 648, 68 So. 931, 932 (1915) (stating that manslaughter "is a degree or grade of unlawful homicide."); Lovell v. State, 882 So.2d 1107 (Fla. 5th DCA 2004) (holding that for purposes of double jeopardy analysis first-degree felony murder and aggravated manslaughter are degree variants or aggravated forms of the core offense of homicide); Lawson v. State, 383 So.2d 1114 (Fla. 3d DCA) ("[M]anslaughter is defined as homicide which is not murder, and which is neither justified nor excused.") (footnote omitted), review denied, 392 So.2d 1379 (Fla.1980); Green v. State, 244 So.2d 167 (Fla. 2d DCA 1971); see also Bautista v. State, 863 So.2d 1180, 1186 (Fla.2003) (holding that DUI manslaughter "falls within the general category of homicide offenses" and that "[h]omicides are punished based on the number of victims because the legislative purpose behind homicide statutes is to safeguard the lives of individuals").
[2] Hunt v. State, 753 So.2d 609 (Fla. 5th DCA), review denied, 767 So.2d 457 (Fla.2000); Wright v. State, 402 So.2d 493 (Fla. 3d DCA 1981); see also Henry v. State, 613 So.2d 429, 432 n. 6 (Fla.1992) ("Moreover, duress is not a defense to intentional homicide because `duress will never justify the killing of an innocent third party.'") (quoting Wright, 402 So.2d at 498), cert. denied, 510 U.S. 1048, 114 S.Ct. 699, 126 L.Ed.2d 665 (1994); Gahley v. State, 567 So.2d 456, 459 (Fla. 1st DCA 1990) ("Moreover, duress or coercion is a recognized defense to crimes other than homicide.") (citations omitted), review denied, 577 So.2d 1326 (Fla.1991). In Wright, the court stated:

Florida has recognized the common law defense of duress as a defense to crimes other than homicide, e.g., Hall v. State, 136 Fla. 644, 187 So. 392 (1939) (perjury); Koontz v. State, 204 So.2d 224 (Fla. 2d DCA 1967) (attempted robbery). In a case of first impression in this state, the First District held that the defense is not available in a case of homicide or attempted homicide. See Cawthon v. State, 382 So.2d 796 (Fla. 1st DCA 1980). That holding finds support in other jurisdictions. See, e.g., State v. Fuller, 203 Neb. 233, 278 N.W.2d 756 (1979); State v. Taylor, 22 Wash.App. 308, 589 P.2d 1250 (1979) (under Washington statute); Jackson v. State, 558 S.W.2d 816 (Mo.App.1977); State v. Jones, 119 Ariz. 555, 582 P.2d 645 (1978); State v. Toscano, 74 N.J. 421, 378 A.2d 755 (1977) (dicta); State v. Kearns, 27 N.C.App. 354, 219 S.E.2d 228 (1975) (dicta); Annot., 40 A.L.R.2d 908 (1955); 40 Am.Jur.2d, Homicide § 119 (1968); 40 C.J.S., Homicide § 113 (1944).
402 So.2d at 498.