WARNER, J.
 

 Appellant, Jimmy Turner, was convicted of fleeing and eluding a law enforcement officer, giving a false name to an officer, and driving while license suspended. He contends that the trial court erred in failing to grant his motion for judgment of acquittal based upon his defense of duress to the fleeing and eluding charge. Because the evidence supporting his defense, namely his own testimony, was rebutted, we affirm. He also moved for judgment of acquittal on the charge of driving while license suspended. Because the state failed to prove the element of knowledge of the suspension, we reverse that conviction.
 

 While on road patrol one evening, a law enforcement officer observed a vehicle operating without headlights. The officer activated his lights and siren and attempted to conduct a traffic stop. The vehicle continued eight blocks without slowing down, turned onto another street, continued one more block, and then turned again into a shopping plaza before coming to a stop. The officer testified that the vehicle did not stop at all when it got to the street where it turned. Two passengers, one of whom was carrying a handgun, exited the vehicle and fled. The officer approached Turner, the driver. At the time Turner was out on bond on another felony. Turner gave the officer a false name, and he was booked into jail under that name. He also told the officer that he did not know his passengers.
 

 At trial, Turner presented a duress defense, claiming that his cousin and a friend were the passengers with him in the vehicle. When the officer turned on his lights and sirens, his cousin “flipped out” and told him to go on. He drove about eight blocks with his cousin screaming at him not to stop. At a corner, Turner stopped but his cousin demanded that he continue to drive. His cousin told him that he had bullet proof vests and masks in the vehicle. The cousin was also wanted on an outstanding warrant. Turner, however, was worried that he was in his girlfriend’s car, and the police could take the car if he continued to “go away.” Then his cousin “pulled it out.” Turner then turned the corner. He eventually stopped in a shopping plaza where his cousin and the passenger fled.
 

 On direct, Turner also told his attorney that he never saw the gun. Then he testified that his cousin’s friend was holding it and running away. Yet on cross-examination he said he actually saw the gun.
 

 Turner admitted that he told the officer that he did not know the names of the people in the car, and he never told the officer that he had been threatened by them. He explained this by saying they were “blood.” He also testified that he did not give the officer his real name, because he was a convicted felon and felt he would not be well-treated by the officer. Defense counsel moved for a judgment of acquittal, which the trial court denied.
 
 *364
 
 The jury convicted Turner of all charges, and Turner appeals.
 

 Turner claims that he presented, as a defense to the charge of fleeing and eluding, unrebutted evidence that he was under duress. As well, he asserts that the state presented no evidence that he knew that his license was suspended. Therefore, as to those two charges he claims that the trial court erred in denying his motion for judgment of acquittal.
 

 A de novo standard of review applies in reviewing a motion for judgment of acquittal.
 
 Pagan v. State,
 
 830 So.2d 792, 803 (Fla.2002). In moving for a judgment of acquittal, a defendant admits the facts in evidence and every conclusion favorable to the adverse party that may be fairly and reasonably inferred from the evidence.
 
 Lynch v. State,
 
 293 So.2d 44, 45 (Fla.1974). A court should grant a motion for judgment of acquittal only if “the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.”
 
 Id.
 
 The court should submit the case to the jury “[w]here there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts.”
 
 Id.
 
 Generally, an appellate court will not reverse a conviction supported by competent substantial evidence.
 
 Pagan,
 
 830 So.2d at 803. “If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.”
 
 Id.
 

 Turner submits that his testimony as to the claim of duress, which would exonerate his conduct, was unrebutted. Therefore, it must be accepted by the trier of fact, and the trial court must enter a judgment of acquittal. In
 
 Dudley v. State,
 
 511 So.2d 1052, 1057-58 (Fla. 3d DCA 1987), the court succinctly stated the impact of a criminal defendant’s testimony:
 

 It is well settled in Florida that a defendant’s otherwise reasonable, unrebutted, and unimpeached testimony in a criminal case must be accepted by a trier of fact and — if such testimony is entirely exonerating, the trial court is obligated to enter a judgment of acquittal for the defendant on the crime charged. On the other hand, where the defendant’s exonerating testimony (a) is not reasonable on its face, or (b) is contradicted by other evidence in the case, or (c) is otherwise impeached, the trier of fact is privileged to reject such testimony and convict the defendant of the crime charged, providing, of course, there is otherwise sufficient evidence of guilt,
 

 (footnote omitted). The issue of an affirmative defense should not be resolved by a judgment of acquittal and should be submitted to the jury where the facts are disputed.
 
 See Dias v. State,
 
 812 So.2d 487, 491 (Fla. 4th DCA 2002).
 

 To prove the defense of duress, a defendant must demonstrate six elements:
 

 1) the defendant reasonably believed that a danger or emergency existed that he did not intentionally cause; 2) the danger or emergency threatened significant harm to himself or a third person; 3) the threatened harm must have been real, imminent, and impending; 4) the defendant had no reasonable means to avoid the danger or emergency except by committing the crime; 5) the crime must have been committed out of duress to avoid the danger or emergency; and 6) the harm the defendant avoided outweighs the harm caused by committing the crime.
 

 
 *365
 

 Driggers v. State,
 
 917 So.2d 329, 331 (Fla. 5th DCA 2005) (citing Fla. Std. Jury Instr. (Crim.) 3.6(k)).
 

 Moreover, as this court has articulated:
 

 A threatened harm that is “impending” is not only one that is “temporal, i.e. about to take place, but includes whether there is, no matter the lapse of time, a reasonable opportunity to escape the compulsion without committing the crime.”
 
 Wright v. State,
 
 402 So.2d 493, 497 n. 6 (Fla. 3d DCA 1981). An “imminent” danger is one which cannot be guarded against by calling for the protection of the law.
 
 Id.
 
 Thus, the defense does not apply where a defendant has an opportunity to escape the compulsion without committing the crime.
 
 Id.; see Gahley v. State,
 
 567 So.2d 456, 459 (Fla. 1st DCA 1990);
 
 Corujo v. State,
 
 424 So.2d 43, 44 (Fla. 2d DCA 1982).
 

 Mickel v. State,
 
 929 So.2d 1192, 1196 (Fla. 4th DCA 2006).
 

 Turner provided equivocal testimony as to the elements of duress. While he testified that his cousin “flipped out” when the officer turned on his lights in an attempt to stop the vehicle, Turner did not mention the gun or any use of force until his cousin told him to turn onto another street. Thus, the evidence is equivocal as to whether the threat of harm was real when he eluded the police for eight blocks. Moreover, his testimony regarding the gun was not consistent, having testified at one point that he never saw the gun and that the friend, not his cousin, was carrying the gun. Secondly, the threat came from his cousin who allegedly pulled the gun on him, yet he refused to divulge his name or this danger to the officers when he finally did stop, because his cousin was “blood.” His explanation that he would not divulge the name of someone who has threatened his life and was capable of inflicting mortal harm simply because he is a relative is less than reasonable. Finally, the officer contradicted his testimony, because the officer testified that Turner did not stop before he turned the corner to the second street, while Turner testified that he did stop. Because Turner’s testimony was not completely reasonable and unrebutted, the court did not err in denying the motion for judgment of acquittal and submitting the case to the jury.
 

 On the motion for judgment of acquittal as to the charge of driving with a suspended license, Turner argued that the state did not present any evidence that he knew his license had been suspended, and he testified that in fact he did not know of it. The Department of Motor Vehicles had suspended his license for failure to pay traffic fines. Its record, admitted into evidence, shows that notice of the suspension was sent to Turner pursuant to section 322.251, Florida Statutes.
 

 Section 322.34(2)(a) provides that a person whose driver’s license has been suspended who, knowing of such suspension, drives any motor vehicle upon the highways of this state while such license is suspended, is guilty of a second-degree misdemeanor. Knowledge is satisfied if the person was previously cited for driving with a suspended license, the person admits to knowledge of the suspension, or the person received notice by way of a judgment or order suspending the driver’s license. § 322.34(2), (4), Fla. Stat. The state did not offer evidence that the defendant
 
 received
 
 the notice from the Department. Thus, it did not prove that he had knowledge of the suspension.
 
 See Brown v. State,
 
 764 So.2d 741 (Fla. 4th DCA 2000). Although the state sought to rely on a rebuttable presumption that the knowledge requirement was satisfied because there was a notation on the Depart
 
 *366
 
 ment’s records that a judgment or court order had been entered suspending his license, the presumption does not apply to the administrative suspension for failure to pay traffic fines.
 
 See
 
 § 322.34(2), Fla. Stat.;
 
 Brown,
 
 764 So.2d at 744; see
 
 also Haygood v. State,
 
 17 So.3d 894 (Fla. 1st DCA 2009).
 

 While the driving record did not prove that Turner had knowledge of his suspended license, the state contends that it presented other evidence from which knowledge could be reasonably inferred.
 
 See
 
 § 322.34(3), Fla. Stat. (“In any proceeding for a violation of this section, a court may consider evidence, other than that specified in subsection (2), that the person knowingly violated this section.”). Specifically, Turner fled and eluded the police officer who attempted to stop him, and, when he finally stopped, Turner gave the officer a false name. That evidence is equivocal at best to prove knowledge of the suspension. Turner was out on bond on another felony charge. He knew that one of his passengers, his cousin, was wanted on a warrant. His cousin told him that they had masks and bullet proof vests in the vehicle. The cousin and the other passenger escaped from the vehicle, one with a gun. Turner could have been fleeing the officer because of any of these factors. For instance, being a four-time convicted felon, he may have been concerned with being apprehended with a firearm in his vehicle. The evidence does not exclude these other equally reasonable inferences. And in this case, his direct testimony that he did not know his license was suspended because he had not received notice of it was not rebutted or challenged.
 

 In opposing the motion for judgment of acquittal the prosecutor relied on the re-buttable presumption, which
 
 Brown
 
 shows is not applicable to this case. Moreover, the state erroneously argued to the jury that the DMV record created a rebuttable presumption of knowledge, and the trial court instructed the jury on the statutory requirements and rebuttable presumption, never informing the jury that it could rely on other evidence from which knowledge could be inferred. On this record, we are compelled to reverse the conviction, as the state did not prove the element of knowledge to support the charge of driving while license suspended.
 

 Turner also argues that the trial court erroneously denied his motion to discharge counsel so that he could retain private counsel. The record, however, does not show that Turner ever requested to discharge his counsel. On the day of trial, he asked the court if he could hire his own counsel, but the court denied the request unless private counsel was present in the courtroom. Counsel was not present, nor is it clear that private counsel had actually been retained. The public defenders assigned to represent Turner told the court they were ready to try the case but admitted that their first conversation with Turner was the day before. Turner had been in prison and had just been returned to Broward County for this trial. He told the court that he did not know about the trial until he was transferred to Broward. The public defender told the court that Turner had wanted them to call a witness but they informed him that it was too late to list a witness. The public defenders did not request a continuance, and the court seemed anxious to get the case to trial as it had been pending for ten months. Turner had not sought to hire counsel during that ten-month period until he appeared for trial. Under these circumstances, the court did not err in denying his request for private counsel.
 
 See, e.g., Evans v. State,
 
 741 So.2d 1190 (Fla. 4th DCA 1999).
 

 We affirm the convictions for fleeing and eluding and giving a false name. We re
 
 *367
 
 verse the conviction for driving on a suspended license with directions to vacate the conviction and sentence.
 

 LEVINE, J. and McCANN, JAMES, Associate Judge, concur.