GRIFFIN, J.
Brian Robert Stannard [“Stannard”] appeals his convictions for trafficking in more than fourteen grams of oxycodone and obtaining a prescription by fraud. Because we agree with Stannard that it was error for the trial court to refuse to charge the jury on the defense of duress, we reverse the conviction and remand for a new trial.
Stannard had been taking oxycodone for knee pain, but the prescription ran out and Stannard had no job. He obtained some oxycodone on credit from a drug dealer named Pops. According to Stannard, he *931 owed Pops $150 for the drugs he previously bought on credit. When Stannard failed to pay what he owed to Pops, Pops and his friends came by several times a month demanding payment. Pops threatened Stannard every time he saw him. Stan-nard was so afraid that he and his mother felt compelled to move from his residence.
Pops found Stannard at his néw address and continued to threaten him. Finally, on April 18, 2010, the night in question, Pops and his friends pulled into the driveway of the residence where Stannard was residing, grabbed Stannard and said, “come on, it’s time to pay up.” They placed him in the back seat of a vehicle. Stannard testified at trial that one of the men in the vehicle told him that this was his last chance; either he “was going to pay up or [he] was going to be beat bad enough that his mom wouldn’t recognize [him].” Pops was driving the vehicle and they took Stannard to a Walgreens Drug Store. On the way, Pops pulled out a prescription that had already been filled out with Stannard’s name and other information. Pops told Stannard that he was to go into Walgreens and fill the prescription to clear his debt.
Stannard went into Walgreens, accompanied by several of Pops’ friends. These friends stayed within sight of Stannard the entire time he was in the store; they were “right there.” Although they did not approach the pharmacist with Stannard, Stannard testified that they were watching him, and he was afraid. Stannard believed that if he did not hand over the prescription, Pops would follow through with his threat to harm Stannard. Stannard was afraid for himself, and he also feared for his mother’s safety. After the prescription was filled, the men took the drugs from Stannard before they left the store.
At trial, Stannard’s counsel asked for the standard criminal jury instruction on duress (Fla. Std. Jury Instr. (Crim.) 3.6(k), which the court denied, stating:
I don’t find that imminent or impending was met and a threat of future harm is not sufficient to prove this defense. It has to be imminent or impending. There has been no testimony other than this was his chance to pay back the money he owed.
[[Image here]]
It’s still not imminent and impending. And walking into the store with a prescription, not calling the police before or afterwards, getting the prescription, ae- ' knowledging that he’s been buying oxy-codone illegally from them and on his own prescriptions, I just don’t find that testimony credible. I have to find it credible in order to allow the legal definition of duress or necessity to stand.
[[Image here]]
It requires that he has no reasonable means to avoid it except by committing the crime.
[[Image here]]
Could have told the pharmacist, please call the police, I’ll stay here.... He didn’t do that.
[[Image here]]
It requires an imminent and impending danger that cannot be avoided by using other means. That’s not the case. And a threat of future harm is not sufficient.
[[Image here]]
Do this or else, that’s a threat of future harm. That’s not sufficient to rise to the legal definition of duress and necessity. So no, I’m not giving that instruction.
In his closing argument, Stannard argued that he had been compelled to act as he did because of the threats from Pops. In response, the State argued:
And Pops, guess what? Pops doesn’t matter.... Pops has no relevance for *932 why you six are sitting here and why you six are going to decide this case. What you need to determine: Has the State proven that the drug is oxyco-done? Yes. Has he received 14 grams of it or more? Yes.... You will not find anything in that instruction packet about Pops that says you can come back not guilty because of all this fantastic story of Pops.
Stannard was found guilty as charged by the jury.[1]
A defendant is entitled to have the jury instructed on his theory of defense if there is any evidence to support it, so long as the theory is recognized as valid under the law of the state. Worley v. State, 848 So.2d 491 (Fla. 5th DCA 2003). The trial court should not weigh the evidence for the purpose of determining whether the instruction is appropriate. Mickel v. State, 929 So.2d 1192, 1196 (Fla. 4th DCA 2006) (quoting Smith v. State, 424 So.2d 726, 732 (Fla.1982)). The trial court should examine the evidence in the light most favorable to the defendant to decide whether the necessary elements of the defense have been placed before the jury. Mickel, 929 So.2d at 1196.
Duress or coercion is a recognized defense to crimes other than homicide. Hall v. State, 136 Fla. 644, 187 So. 392 (1939). Duress was said to excuse criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law. United States v. Bailey, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). To be entitled to a charge on the defense of duress, the defense version of the evidence must demonstrate six elements:
1) the defendant reasonably believed that a danger or emergency existed that he did not intentionally cause; 2) the danger or emergency threatened significant harm to himself or a third person; 3) the threatened harm must have been real, imminent, and impending; 4) the defendant had no reasonable means to avoid the danger or emergency except by committing the crime; 5) the crime must have been committed out of duress to avoid the danger or emergency; and 6) the harm the defendant avoided outweighs the harm caused by committing the crime.
Driggers v. State, 917 So.2d 329, 330 (Fla. 5th DCA 2005). See Std. Jury Instr. (Crim.) 3.6(k). A threatened harm that is “impending” or “imminent” is one that is about to take place and there is no reasonable opportunity to escape the compulsion without committing the crime. Wright v. State, 402 So.2d 493, 497 n. 6 (Fla. 3d DCA 1981).
Here, there was evidence that a direct threat of serious bodily harm was made, that the defendant believed the threat, and that the threat of harm was capable of being carried out immediately. The State contends that the threatened harm was not “impending” or “imminent” because Stannard had at least one opportunity to escape Pops’ compulsion. The State suggests that when he was alone at the pharmacy counter with the pharmacist, Stannard had an opportunity to alert the pharmacist and to have the pharmacist contact the police. Whether Stannard’s story was credible, whether the threatened harm was imminent and impending, and whether he had a reasonable means to avoid the threatened harm are for the jury.
*933 We reject the State’s argument that the error in not instructing the jury on duress was harmless. Not only was the jury given no opportunity to weigh the elements of Stannard’s defense, but the State expressly argued that his defense was irrelevant because there was no instruction.
REVERSED and REMANDED for a new trial.
PALMER and LAWSON, JJ., concur.

. Stannard was sentenced to fifteen years on the trafficking charge and five years concurrent on the fraud charge.