DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LEWIS DARREN FRANKLIN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-1410

[June 26, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Glenn Kelley, Judge; L.T. Case No. 502017CF001725AXXX-MB.

Carey Haughwout, Public Defender, and Timothy Wang, Assistant Public Defender, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Alexandra A. Folley, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant, Lewis Franklin, appeals his convictions and ten-year sentence for fleeing or attempting to elude causing serious bodily injury; leaving the scene of a crash involving serious bodily injury; resisting an officer without violence; leaving the scene of a crash involving property damage; and driving while license suspended. We write only to address Appellant's challenge to Florida Standard Jury Instruction (Criminal) 3.6(k)6., as applied to his affirmative defense of duress. On that argument and all others raised, we affirm.

**Background**

The State presented the following evidence at trial. A Riviera Beach police officer saw Appellant's vehicle fail to come to a complete stop at a stop sign. The officer activated her lights and siren, and the vehicle pulled over but did not stop; it then returned to the road. A pursuit ensued, during which Appellant's car reached 70 miles per hour ("mph") in a 25 mph speed zone. Appellant drove through five stop signs until "t-boning"

another car in an intersection and then veering off the road and crashing into a Popeye's restaurant.

Immediately after the crash, Appellant climbed out of the driver's side window and ran across the street, running into a police car as he fled. Appellant kept running away from the accident scene as uniformed officers told him to stop. Appellant did not stop until an officer "tased" him. The driver of the car that was hit by Appellant's vehicle was transported away in a coma. He sustained a traumatic brain injury and is now disabled.

The State's theory of the case was that Appellant fled because he was on probation and driving on a suspended license. Appellant's theory of defense was that he acted out of duress. He testified that his front seat passenger, who he knew only as "Black," compelled him to flee at gunpoint. He claimed to have fled the scene after the crash because Black was still pointing a gun at him.

Appellant's son, the son's fiancée, and another woman were in the backseat. The fiancée testified that Black said he had guns, but admitted she failed to so inform the police when questioned after the crash. The State submitted police dash-cam video which shows that the backseat passengers were much slower to exit the SUV than Appellant and they did not flee. An individual matching Appellant's description of Black was seen running from Appellant's vehicle. He was never located by police.

During the charge conference, defense counsel affirmatively agreed to the standard jury instruction on duress, requesting only one additional sentence (italicized below). The trial court so instructed the jury on duress as follows:

> An issue in this case is whether LEWIS DARREN FRANKLIN acted out of duress in committing the crimes of Fleeing or Attempting to Elude (Serious Injury or Death) and/or Leaving the Scene of a Crash Involving Serious Bodily Injury and/or Resisting Officer Without Violence and/or Leaving the Scene of a Crash with Damage.
>
> It is a defense to the crimes charged if the defendant acted out of duress. *The defense of duress should be considered for each of these charged crimes independently.* In order to find the defendant committed the charged crimes out of duress, you must find the following six elements:
>
> 1. The defendant reasonably believed a danger

2

existed which was not intentionally caused by himself.

2. The danger threatened significant harm to himself or a third person.

3. The threatened harm must have been real, imminent, and impending.

4. The defendant had no reasonable means to avoid the danger except by committing the crime of Fleeing or Attempting to Elude (Serious Injury or Death) and/or Leaving the Scene of a Crash Involving Serious Bodily Injury and/or Resisting Officer Without Violence and/or Leaving the Scene of a Crash with Damage.

5. The Fleeing or Attempting to Elude (Serious Injury or Death) and/or Leaving the Scene of a Crash Involving Serious Bodily Injury and/or Resisting Officer Without Violence and/or Leaving the Scene of a Crash with Damage must have been committed out of duress to avoid the danger.

6. The harm that the defendant avoided must outweigh the harm caused by committing the Fleeing or Attempting to Elude (Serious Injury or Death) and/or Leaving the Scene of a Crash Involving Serious Bodily Injury and/or Resisting Officer Without Violence and/or Leaving the Scene of a Crash with Damage.

(Emphasis added); *see* Fla. Std. Jury Instr. (Crim.) 3.6(k).

The jury found Appellant guilty on all counts.

## Analysis

On appeal, Appellant argues that the inclusion of element 6 in the jury instruction on duress was fundamental error. He concedes that this element is part of the standard jury instruction, but contends that it is not a correct statement of the common law defense of duress.

3

Jury instructions "are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred." *Martinez v. State*, 981 So. 2d 449, 455 (Fla. 2008) (quoting *State v. Delva*, 575 So. 2d 643, 644 (Fla. 1991)). However, "[t]he invited error doctrine provides that fundamental error may be waived where defense counsel affirmatively agrees to an improper jury instruction." *Morgan v. State*, 146 So. 3d 508, 512 (Fla. 5th DCA 2014) (citing *Universal Ins. Co. of N. Am. v. Warfel*, 82 So. 3d 47, 65 (Fla. 2012)). The rationale is that "a party may not make or invite error at trial and then take advantage of the error on appeal." *Id.* (quoting *Sheffield v. Superior Ins. Co.*, 800 So. 2d 197, 202 (Fla. 2001)); *see also Joyner v. State*, 41 So. 3d 306, 307 (Fla. 1st DCA 2010) ("[W]here defense counsel agrees to a standard jury instruction and then challenges the conviction based upon fundamental error in that instruction, reversal would have the unintended consequence of encouraging defense counsel to stand mute and, if necessary, agree to an erroneous instruction or sacrifice his client's opportunity for a second trial.") (citation and internal quotation marks omitted)).

Here, Appellant not only failed to object to the now challenged element of the jury instruction, he affirmatively agreed to the entire instruction—with the addition of one sentence which was included at his request. Thus, any error in the instruction was waived, and we affirm on this issue.

We nonetheless address Appellant's contention that the inclusion of element 6 in instruction 3.6(k) is in derogation of the common law with respect to the defense of duress. No Florida statute authorizes "duress" as a defense to any of the crimes with which Appellant was charged. Thus, courts must look to the common law. *See* § 2.01, Fla. Stat. (2017). Prior to the 1998 adoption of instruction 3.6(k), this court articulated the defense of duress as follows:

> In *Hall v. State*, 136 Fla. 644, 187 So. 392 (1939), our supreme court held that one may be excused from the commission of a crime if his acts were done under the compulsion or coercion of a real, imminent and impending danger or of what he had reasonable grounds to believe was a real, imminent and impending danger. . . .
>
> * * *
>
> One of the requirements of the defense is that the coercion must be continuous and that the defendant must have no

4

> reasonable opportunity to escape the compulsion without committing the crime. *Koontz v. State*[, 204 So. 2d 224 (Fla. 2d DCA 1967)]. The threat of future harm does not suffice. *Cawthon v. State*, 382 So. 2d 796 (Fla. 1st DCA 1980).

*Aljak v. State*, 681 So. 2d 896, 897 (Fla. 4th DCA 1996) (second omission in original) (quoting *Corujo v. State*, 424 So. 2d 43, 44 (Fla. 2d DCA 1982), *rev. denied,* 434 So. 2d 886 (Fla. 1983)). In neither *Hall* nor *Koontz* was the "outweigh the harm" element included in the discussion of the defense of duress (also referred to as "compulsion" or "coercion"). *See Hall*, 187 So. at 408-09; *Koontz*, 204 So. 2d at 226-27. These cases provide support for an argument that, prior to the adoption of standard jury instruction 3.6(k), element 6 was not traditionally part of the common law defense of coercion or duress.[1]

On the other hand, in *Driggers v. State*, 917 So. 2d 329 (Fla. 5th DCA 2005), the Fifth District said that Instruction 3.6(k) "derives from the common law" and "encapsulate[s]" the "defense of duress." *Id.* at 331. We followed *Driggers* in *Mickel v. State*, 929 So. 2d 1192, 1196 (Fla. 4th DCA 2006) and quoted that opinion's recitation of the six elements of duress, including element six. *Accord Turner v. State*, 29 So. 3d 361, 364-65 (Fla. 4th DCA 2010). Moreover, the cases discussed in *Driggers* predated Instruction 3.6(k) but nonetheless discussed what became element 6, which *Driggers* termed the "choice of evils rationale." *Driggers*, 917 So. 2d at 332. In both *Hunt v. State*, 753 So. 2d 609, 613 (Fla. 5th DCA 2000) and *Wright v. State,* 402 So. 2d 493, 498 (Fla. 3d DCA 1981), the defense of duress was found nonapplicable because the crime charged was homicide. Both cases quoted a 1977 Missouri opinion:

> Legal recognition of *duress as a defense* to crimes other than homicide necessarily *assumes a working hypothesis that a harm or crime of greater magnitude is avoided when the subjected person succumbs to the duress*. This hypothesis

---

[1] Commentators likewise have not always included a "choice of evils" rationale akin to element 6 in their discussion of the common law defense of duress. *See, e.g.,* Wayne R. LaFave, *Duress*, 2 SUBST. CRIM. L. § 9.7 (3d ed. 2018) ("The rationale of the defense of duress is that the defendant ought to be excused when he 'is the victim of a threat that a person of reasonable moral strength could not fairly be expected to resist.'" (footnote omitted) (quoting Joshua Dressler, *Exegesis on the Law of Duress: Justifying the Excuse and Searching for its Proper Limits*, 62 SO. CAL. L. REV. 1331, 1367 (1989))); 21 AM. JUR. 2D *Criminal Law* § 137 (2019); *Duress*, 1 WHARTON'S CRIMINAL LAW § 52 (15th ed. 2018).

> disappears when duress is sought to be invoked as a defense in a homicide case.

*Jackson v. State*, 558 S.W.2d 816, 820 (Mo. Ct. App. 1977) (emphasis added).

Thus, it is unclear as to whether one can definitively say that the "choice of evils" concept that is now element 6 of instruction 3.6(k) derives from what is considered to be "the common law" with respect to the defense of duress.[2] In any case, we are unaware of any challenge to the inclusion of element 6 in the jury instruction for duress during the more than two decades history of that instruction. Moreover, as noted above, Appellant affirmatively agreed to the entire jury instruction on duress, thus waiving any argument of error with respect to that instruction.

### Conclusion

Appellant waived his fundamental error challenge to the standard jury instruction on duress by affirmatively agreeing to the entire standard instruction. The trial court's judgment and sentence are affirmed.

*Affirmed.*

WARNER and GROSS, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

---

[2] As noted above, element 6 of the jury instruction requires a factfinder to weigh criminal conduct against a harm sought to be avoided. One authority indicates that such a weighing process is a part of both the duress and necessity defenses. "The rationale of the defense of duress is that, for reasons of social policy, it is better that the defendant, faced with a choice of evils, choose to do the lesser evil (violate the criminal law) in order to avoid the greater evil threatened by the other person." Wayne R. LaFave & Austin W. Scott, Jr., HANDBOOK ON CRIMINAL LAW § 49 (1972). Similarly, the rationale of the necessity defense is one of social policy: "[I]f the harm which will result from compliance with the law is greater than that which will result from violation of it, [a person] is justified in violating it." *Id.* § 50.