37 So.3d 925 (2010)
David Robert RICHARDS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D08-4216.
District Court of Appeal of Florida, Fourth District.
June 9, 2010.
Rehearing Denied July 20, 2010.
Jack A. Fleischman of Fleischman & Fleischman, P.A., West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellee.
CIKLIN, J.
The central question presented for review is whether the State failed to present *926 a prima facie case of possession of cocaine with intent to sell.
The appellant, David Richards, was found guilty of and sentenced to ten years in prison for possession of cocaine with intent to sell or deliver in violation of section 893.13(1)(a)1, Florida Statutes. Other than a meritless argument related to a jury selection cause challenge, Richards' sole argument on appeal is that the trial court erred in denying his motion for judgment of acquittal because only one of seven bags of suspected cocaine introduced into evidence had been laboratory tested. Because the State offered additional and uncontested circumstantial evidence indicating intent to sell, we find the trial court did not err by submitting this issue to the jury and affirm.
During the State's case in chief, law enforcement officers testified that Richards was found in possession of a coin purse that contained seven individual and similarly packaged bags of a white powdery substance in varying weights. Daniel Jones, a seasoned narcotics detective, testified that the bags in Richards' possession all appeared to contain cocaine and that possession of more than approximately three grams, packaged in individual "baggies" and utilizing Richards' "method of storage," was inconsistent with personal use and consistent with drug dealing. He testified that the average cocaine (non-dealer) purchaser typically buys just one gram or less at a time and that he had never arrested a (non-dealer) purchaser in possession of seven individually wrapped baggies of cocaine in varying weights. Detective Jones suggested that while (non-dealer) purchasers normally keep their cocaine in concealed locations such as pockets and socks, drug dealers often store cocaine in multiple individual baggies within containers such as the coin purse utilized by Richards. Detective Jones opined that the amount of cocaine in Richards' possession was equivalent to 140 "dosage units" with a street value of $900-$1000.
The State also offered the testimony of Babu Thomas, a senior criminalist who tested one of the seven bags. That bag, which weighed three grams, tested positive for cocaine. Thomas stated that in his scientific opinionbased on consistency and appearanceeach of the seven bags contained cocaine. The seven bags, without objection from the defendant, were then admitted into evidence. After the State rested, Richards moved for a judgment of acquittal, arguing that because only one of seven confiscated bags was tested, there was insufficient evidence to establish intent to sell.
A de novo standard of review applies in reviewing a motion for judgment of acquittal. Pagan v. State, 830 So.2d 792, 803 (Fla.2002). In moving for a judgment of acquittal, a defendant admits the facts in evidence and every conclusion favorable to the adverse party that may be fairly and reasonably inferred from the evidence. Lynch v. State, 293 So.2d 44, 45 (Fla.1974). A court should grant a motion for judgment of acquittal only if "the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." Id. The court should submit the case to the jury "[w]here there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts." Id. Generally, an appellate court will not reverse a conviction supported by competent substantial evidence. Pagan, 830 So.2d at 803. "If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the *927 elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." Id.; see Turner v. State, 29 So.3d 361, 364 (Fla. 4th DCA 2010).
Richards cites Ross v. State, 528 So.2d 1237, 1239 (Fla. 3d DCA 1988) in support of his argument that in cases involving powdery substances in individually wrapped packets, the State has the burden of proving that each separate packet contains actual cocaine. He maintains that the State's failure to do so renders its evidence legally insufficient to sustain a finding of guilt as to intent to sell and therefore urges that the trial court erred by not granting his motion for judgment of acquittal following the State's presentation of its case in chief.
We find that Ross is distinguishable and not controlling because Ross involved a defendant charged with drug trafficking where the amount of cocaine actually possessed was an element of the charged offense. Id. at 1239 ("It is essential in order to sustain a cocaine trafficking conviction that each packet of white powder be chemically tested . . . to contain cocaine, and that the total weight of the material in the tested packets equal or exceed twenty-eight (28) grams.").
To the contrary, the amount of cocaine actually possessed is not an element of the charged offense in the instant case. See § 893.13(1)(a), Fla. Stat. ("[I]t is unlawful for any person to . . . possess with intent to sell, manufacture, or deliver, a controlled substance.").
While the amount of actual cocaine possessed by Richards may, by itself, be insufficient circumstantial evidence of intent to sell, other proof was offered up by the State.
Richards' possession of the coin purse that contained seven baggies of a white powdery substance, one of which tested positive for cocaine, along with the testimony of Detective Jones and Senior criminalist Thomas was of sufficient evidentiary stature to survive a motion for judgment of acquittal. The jury was then free to believe or disbelieve that Richards had, as the State alleged, the intent to sell the cocaine in Richards' possession, whatever that amount may have actually been. Compare Sampson v. State, 863 So.2d 404 (Fla. 4th DCA 2003) (motion for judgment of acquittal was appropriately granted when the State failed to present evidence that the weight and manner in which the cocaine was possessed was inconsistent with personal use); Glenn v. State, 824 So.2d 1046, 1048-49 (Fla. 4th DCA 2002) (holding that evidence was insufficient to survive motion for judgment of acquittal when State failed to present any evidence as to packaging for sale and the money recovered); Jackson v. State, 818 So.2d 539 (Fla. 2d DCA 2002) (evidence was insufficient to survive judgment of acquittal where State failed to present testimony from expert that amount and manner in which cocaine was possessed was inconsistent with personal use); McCullough v. State, 541 So.2d 720 (Fla. 4th DCA 1989) (conviction reversed where State offered no testimony that amount of cocaine possessed was inconsistent with personal use).
Richards' motion for judgment of acquittal was appropriately denied. See Bedford v. State, 995 So.2d 1122 (Fla. 4th DCA 2008).
The appellant's second point on appeal is without merit.
Affirmed.
GROSS, C.J., concurs.
FARMER, J., dissents with opinion.
FARMER, J., dissenting.
We have the following issue at the heart of this appeal:

*928 Can the State prove possession of a substance statutorily defined by a precise elemental chemical composition without competent scientific evidence establishing that the substance was composed of the statute's prescribed chemical elements, compound, or mixture?

In my opinion anything less than such scientific proof is not substantial, by which I invoke that term's crucial evidentiary importand hence incompetent to satisfy the statute's requirements.
Police visited a house during a search for vagrant children. Along with six other persons, defendant was inside when police arrived but did not live there or have any interest in the house. A purse lay near him, which he apparently tried to move out of sight as police moved about. Inside the purse seized by police were 7 bags each containing a white powdery substance outwardly resembling many distinctly different substancessome banned by law, some not.
The alleged crime is possession for sale of a controlled substance[1] in violation of § 893.13(1)(a)1, defining the contraband as a "controlled substance named or described in ... § 893.03[]." The Information alleged he intended to sell the substance named or described in § 893.03(2)(a)4 as "cocaine or ecgonine, including any of their stereoisomers, and any salt, compound, derivative, or preparation of cocaine or ecgonine." See § 893.13(1)(a)1 and § 893.03(2)(a)4.
These two statutes do not criminalize possession of flour, cornstarch, baking soda, arrowroot, confectioners sugar, powdered milk, talcum powder, and many other white powdery substances externally mimicking cocaine. They require the State to prove the chemical substance stated in the Information. Hence the State had the burden of proving that the substance in the 7 bags was composed of the actual chemical elements, compound or mixture named or described in § 893.13(1)(a)1 as "cocaine or ecgonine, including any of their stereoisomers, and any salt, compound, derivative, or preparation of cocaine or ecgonine."
Although § 893.13(1)(a)1 does not specify any particular quantity by weight or packaging, it does specify as an essential element of the crime a specific intent to sell the substance with the chemical composition named or described in the statute. Indeed, the chemistry of the charged substance is plainly the material element of the offense. Even though the statute does not specify weight or packaging as an element of the crime, in this case the State's circumstantial evidence of weight and packaging constitutes its only evidence of an intent to sell. Consequently the State made weight and packaging essential to a conviction of intent to sell. See Purifoy v. State, 359 So.2d 446, 448-49 (Fla. 1978) (State has burden of proving any essential element of the crime charged).
As part of its purpose to penalize controlled substances, Chapter 893 of the Florida Statutes explicitly lays down the method for proving the chemical composition of the controlled substances named or described in the two statutes. The method-of-proof statute stipulates:

"Any controlled substance or listed chemical seized as evidence may be sample tested and weighed by the seizing agency after the seizure. Any such sample and the analysis thereof shall be admissible into evidence in any civil or criminal action for the purpose of proving *929 the nature, composition, and weight of the substance seized." [e.s.]
§ 893.105(1), Fla. Stat. (2009).
It is obvious that § 893.105 does not necessarily require testing the entire amount seized; instead police may "sample" test such substances. If the entire quantity of a substance is combined or intermingled in a single container or openly in bulk, a single sample may be proper. When substances are not intermingled, however, and are instead separated into individual containers or packages, the different containers eliminate any possible inference of a common mixture of the same chemical composition in all containers. Without intermingling, each container or package would have to be sample tested. If representative portions of separate packages are properly drawn and tested, the State can make a prima facie case that the separate amounts from which the representative portions were drawn together constitute the total quantity of the chemical substance named or described in the statute.
Notably, § 893.105(1) provides no authority for untested substances seized with a tested substance to be admitted into evidence. The statute specifies that only tested substances may be admitted "for the purpose of proving the nature, composition, and weight of the substance seized." Because the crime turns on the chemical substance named or described in the statute, the drafters recognized that untested matter would not afford any basis under the "reasonable doubt" standard to reliably infer from external appearance that the matter seized constitutes the chemical substance named or described in the statute. It is thus inescapable that statutes controlling substances named or described only by their chemical names or designations require proof of the chemical composition. And proof of the precise chemical elements, compound or mixture, requires the evidence derived from the scientific method of testing laid down in § 893.105(1).
Again, police seized 7 separate bags of some substance. Using § 893.105(1) they sample tested the contents of only one bag weighing not more than 3 grams.[2] The State explained the failure to test all bags as a matter of economy: it was more expensive to do so. In place of the statutorily prescribed scientific chemical analysis, the State offered only the testimony of a police officer claiming to have special knowledge in visually ascertaining the interior chemistry of matter seized in such arrests. He testified that because the other 6 bags looked like the one whose substance was tested, the substance in each must be identical to the substance in the only one tested. He based his opinion on his experience in many arrests involving controlled substances.
Anyone can say of substances "it all looked alike to me," but "all that glitters is not gold."[3] For good reason, therefore, § 893.105(1) omits any authority to prove chemical composition by testimony that the substance in one container superficially resembles a substance in another. Section 893.105(1) gave police the power to settle the actual chemical composition of all 7 substances by authoritative scientific testing of a representative sample from each of the bags. It was only economic convenience that kept them from sample testing *930 the other 6 bags.[4]
The State's "expert opinion" may seem enticing to those energized by the ethos, empathies and emanations of the War on Drugs. But even based on long experience in arresting drug offenders, it is really a superficial ipse dixit glibly but speciously offered as a mythical expertise in distinguishing the interior chemistry of one powdery substance from another by plain surface sight.
In no other area does the law recognize competence to reliably state by inference from external appearance the actual chemical make-up of substances used, possessed or consumed.[5] The process and manner by which the officer developed this alchemy of divining interior chemical properties is capable of no replication, testing, or verification beyond the mere assertion that he has it. No conceivable police experience supports an ability to infer that, because one container looks like another, the substance within each must be the same identical chemical compound. This fancied skill is really a universally recognized logical fallacy all dressed up for trial in a charade of specialized knowledge.[6] As opinion testimony, it is a conjured science straining to salvage a failed logic.
Universally accepted principles of standard Logic hold it possible to validly infer that an attribute of a collective will be found within one of its particulars; thus:

All S is C.

X is S.

Therefore X is C.

But one cannot validly infer thatas the State would have us do herebecause an attribute is found in a particular it is necessarily also contained within a collective; thus:

Some S is C.

X is S.

Therefore X is C.

The evidence of sale is 7 different, separately packaged, collectivesnot one. The State's attempt to extrapolate the test result for a single bag to all bags falls apart because it is rooted in this long accepted fallacy of composition symbolically illustrated above. See, e.g., Irving M. Copi, INTRODUCTION TO LOGIC (3rd ed.) 80-83 (1968). The inference is not rationally possible.
In short the police relied on incompetent evidence to prove chemical composition. No such evidence being possible, the substance in the 6 untested bags must be *931 accepted as of unknown chemical composition. Hence only a single bag of less than 3 grams stands as evidence that defendant possessed a controlled chemical substance with the intent to sell it.
In testimony during the State's case in chief, the police officer agreed that 3 grams of cocaine was consistent with an intent for personal use rather than sale. Hence there is no way around the fact that the circumstantial evidence of 3 grams of cocaine is consistent with personal use. This was thus purely a circumstantial evidence case on the critical element of intent to sell, and none of the State's evidence eliminates the fact that defendant had cocaine only for personal use.
Ignoring the method-of-proof statute, the State argues there were enough separate containers of some substance to dispel a reasonable inference that he had it for personal use. But, again, the State's evidence shows only a single bag of cocaine weighing not more than 3 grams, not an amount on which to infer intended sale. Because no intent to commit any crime covering the precise substance named in the Information is rationally possible for the 6 bags of unknown chemical substance, the State's evidence of a single bag of 3 grams of cocaine fails as a matter of law to prove an intent to sell a controlled substance the very essence of the crime charged.
It is suggested that the number of packages alone eliminates any inference of personal use. Plainly this argument proceeds on having so many bags of any substance. But a counterfeit substance in the 6 bags could just as reasonably imply a plan for himself to consume the 3 grams of the real thing and sell the other stuff to some gullible dupe. That may be wickedly deceitful, but it is not the crime charged and tried.
It is the trial judge's proper task to review circumstantial evidence to determine the presence or absence of its competency from which the jury could infer guilt to the exclusion of all other inferences. State v. Law, 559 So.2d 187, 189 (Fla.1989). Even though some circumstantial evidence can be sufficient to suggest a probability of guilt, such evidence is not adequate to support a conviction if it is also consistent with any reasonable theory of innocence. McArthur v. State, 351 So.2d 972, 977 (Fla.1977).
Correctly understood, the State's circumstantial evidence of intent to sell cocaine did not eliminate an inference that his intent was to use the cocaine himself; hence the State was required to present something other than the circumstances of quantity and packaging. See e.g. Johnston v. State, 863 So.2d 271, 284 (Fla.2003) (testimony explaining presence of fingerprints at scene in circumstantial evidence case imposed burden on State to rebut explanation in order to make prima facie case); Jaramillo v. State, 417 So.2d 257 (Fla. 1982) (evidence of fingerprints found at murder scene insufficient to support first-degree murder where State failed to adduce rebuttal evidence that prints could have been placed only when murder committed).
Decisions on motions for acquittal are reviewed de novo. Pagan v. State, 830 So.2d 792, 803 (Fla.2002). Applying these principles here, the trial court erred in denying the motion for judgment of acquittal. The failure of the State to offer any further evidence of intent to sell beyond its circumstantial evidence of quantity and packaging means that the total evidence was not inconsistent with defendant's theory of innocence of an intent to sell.
It is true that an accused has the right to object to the admission of specific evidence as the case progresses. But when *932 the State rests, the mere fact that he has refrained from objecting to deficient circumstantial evidence does not ipso facto establish that the State's evidence viewed as a whole is competent and substantial as a matter of law to establish guilt. There is no rule requiring a defendant to object to incompetent, insubstantial evidence or waive the right to challenge the State's final proof on the grounds that considered entirely it does not competently and substantially prove guilt.[7]
A defendant always has the right to have the trial judge assess whether the entire body of evidence makes out a prima facie case of the crime charged. It is thus quite erroneous to suppose that defendant waived the right of this ultimate test at the end of the State's case simply because he did not quarrel with the admission of the State's evidence.
Today the court holds that one-tenth of an ounce of cocaine powder in a single bag, found with 6 other bags of unknown substance, is enough to erase any intent of personal use. This simply cannot be seriously accepted as sufficient evidence to dispel a reasonable inference of personal use from the amount involved in this case. If this evidence is sufficient to eliminate the inference of personal use, it is hard to imagine any quantity that would not be enough to prove an intent to sell.
Defendant's conviction for possession for sale should be reversed and the charge reduced to simple possession of not more than 3 grams.
NOTES
[1] See MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY (CD-ROM ed.) (search term, substance: "matter of definite or known chemical composition: an identifiable chemical element, compound, or mixture").
[2] 3 grams = 0.11 ounce.
[3] William Shakespeare, THE MERCHANT OF VENICE, II, vii. See also John Dryden, THE HIND AND THE PANTHER (1687) ("For you may palm upon us new for old: all, as they say, that glitters is not gold").
[4] Melendez-Diaz v. Massachusetts, ___ U.S. ___, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), recently held that the Confrontation Clause is not satisfied by affidavits and that the chemist must testify at trial and be subjected to cross examination. Massachusetts argued that such testimony would be too burdensome and costly. 126 S.Ct. at 2549-50. The Court's opinion responded: "the Confrontation Clause may make the prosecution of criminals more burdensome, but that is equally true of the right to trial by jury and the privilege against self-incrimination." 126 S.Ct. at 2540. That response applies equally to Florida's statute requiring that chemical composition relied on to prove guilt be scientifically tested. The cost of proving guilt may be high but that is the indispensable infrastructure of a Constitution.
[5] Under the evidentiary premise asserted by the State in this case, courts could allow the same kind of police testimony in DUI prosecutions, ignoring scientific blood testing and testifying, instead, that because an empty quart bottle of rum lay nearby the driver had obviously ingested enough alcohol to blow an unlawful blood alcohol level. This construct of claimed competence could also allow similar expertise insaycivil medical malpractice or products liability litigation. If it satisfied the heavy burden of proof for criminal conviction, surely it would meet the lesser civil standard.
[6] Calling it "junk science" seriously debases the value of good junk.
[7] Why fight over the admission of incompetent evidence wheneven with all the proof considered as a wholethe State has simply failed to prove an essential element to prove guilt?