DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**JAMAAL PICKERSGILL,**
Appellee.

No. 4D18-3115

[October 30, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Marina Garcia-Wood, Judge; L.T. Case No. 18-005887CF10A.

Ashley Moody, Attorney General, Tallahassee, and Kimberly T. Acuña, Assistant Attorney General, West Palm Beach, for appellant.

Carey Haughwout, Public Defender, and David John McPherrin, Assistant Public Defender, West Palm Beach, for appellee.

FORST, J.

The State appeals from a post-verdict judgment of acquittal. In response, Appellee Jamaal Pickersgill argues that this court lacks jurisdiction to consider the appeal. We disagree; we have jurisdiction. We further find the State presented competent substantial evidence to support the jury's verdict on all counts. Accordingly, we reverse.

**Background**

The State proceeded to trial against Pickersgill on charges of: (1) possession of tetrahydrocannabinols ("THC"); (2) possession of cannabis with intent to deliver/sell; and (3) resisting a police officer without violence. The trial evidence, taken in the light most favorable to the State, recounts the following events took place on the date of Pickersgill's arrest.

Coral Springs Police Officers Monzon and Gomez stopped the car in which Pickersgill was a passenger for making an abrupt U-turn in front of their vehicle (which caused Officer Monzon to slam on the brakes of the

patrol car), and because the car's driver and front passenger (Pickersgill) were not wearing seatbelts. Pickersgill exited the passenger side of the car and, ignoring Officer Gomez's command to get back in the car, took off running. Officer Gomez chased Pickersgill for about forty yards until Pickersgill stopped. After taking Pickersgill into custody, the officers detected an odor of marijuana coming from the stopped car. Officer Monzon testified: "I wasn't even near the car and you could smell it. As soon as you open[ed] the door, it hit you like a ton of bricks."

The officers called for a K-9 unit, and the K-9 alerted to both rear doors of the vehicle and to the glove compartment. Seventy-two pre-rolled marijuana cigarettes ("blunts") and four bags of a green leafy substance were found in a backpack in the backseat, directly behind Pickersgill's seat. A wax substance was found in the glove compartment, directly in front of Pickersgill's seat.

The marijuana cigarettes were packaged in individual tubes and marked with a sticker that read, "RX package in compliance with state and local laws and regulations." One of these cigarettes field tested[1] positive for marijuana. A sample from each bag containing the green leafy substance was also field tested and all of the samples tested positive for marijuana. Later forensic tests confirmed that the wax substance recovered from the glove compartment contained THC.

Officer Monzon testified that Pickersgill voluntarily stated at the scene that the narcotics were his and, after being read his *Miranda*[2] rights, he then reiterated that "[e]verything in the vehicle" was his. Officer Gomez also testified that Pickersgill "was Mirandized on scene," waived his *Miranda* rights, and "took ownership" of the backpack, confessing that he was going to sell the marijuana. The officers did not obtain a written waiver of *Miranda* rights or record Pickersgill's statements at the scene.

Both officers testified that Pickersgill made further admissions after arriving at the police station. Officer Monzon noted that, while he was reminding Pickersgill of his *Miranda* rights, Pickersgill interjected before

---

[1] At trial, Officer Gomez testified that he conducted a "mold field test" with a plastic container "that contains several chemicals in it that when the chemicals come into contact with the substance it's able to provide if it's marijuana or not." Officer Gomez further testified that he had received specialized training on identifying narcotics, including "an extra class to get certified." Officer Monzon testified that he had received training on identifying narcotics based on appearance, smell, and "testing."

[2] *Miranda v. Arizona,* 384 U.S. 436 (1966).

the officer could finish and again stated, "[e]verything in the car is mine." Officer Gomez also testified that, at the station, Pickersgill said "everything was his." According to Officer Monzon, the recording of Pickersgill's statements at the police station was erased before Monzon requested it. Monzon did not know that the recording would not be preserved.

Sean Grier, the driver of the car, was also taken into custody. He told police that he was helping Pickersgill "sell the narcotics in the vehicle." He was released at the time, having agreed to act as a confidential informant.

After the State rested its case, Pickersgill moved for a judgment of acquittal on all three counts. Pickersgill argued in part that there was "no direct evidence that [he] was in direct possession" of the narcotics. Specifically, he asserted that because the cannabis was found in a backpack in the back of the car, and the THC was found in the glove compartment, he did not have exclusive control over those items. And, absent a video of his statements or a written waiver of *Miranda* rights— there was "just an allegation by two officers" without corroboration.

In response, the State argued it proved both actual and constructive possession. The State pointed to Pickersgill's admissions to the officers that the drugs were his.[3] The trial court remarked that Pickersgill "allegedly" made the admissions and the statements were not corroborated by anything other than the officers' testimony. Noting the absence of a written statement or recording, the judge commented, "there's inconsistency on the issue of whether he was Mirandized during these alleged admissions."

As arguments continued, the court again commented on the lack of corroboration of the officers' testimony: "There's no written document indicating a written admission. . . . He made these two confessions. All we have is the Detective[s] saying that he confessed." The State replied that the testimonial evidence sufficed and a written *Miranda* waiver is not required. Regarding the absence of a written waiver or video recording, the following discussion occurred:

> THE COURT: And then we go back to the admission that it's not written. We have, according to your argument, two experienced officers that did not know that they had to request to preserve the tape of the -- where they did -- the holding cell, where they did the interrogation. Did not know that they had

---

[3] Pickersgill never moved to suppress either the drugs or his statements to police. Nor did he dispute that the substance found in the car was in fact THC.

to preserve the tape.  So, therefore, because I guess they didn't know whether the charges were going to be filed, no one did anything.  *The evidence wasn't preserved.  From two experienced police officers.*

[THE STATE]: But, Your Honor, the evidence that the State can use in proving its case beyond a reasonable doubt doesn't have to be video evidence only.  Testimonial evidence alone, even . . . is sufficient.

THE COURT: But here you have two partners that are corroborating and they said the same, but, other than that and *the best evidence would have been in fact, the video.*  I mean when people interrogate, there's usually a video tape.  *I have never heard a police department say we don't preserve it unless we're asked to preserve it.  To me that is unbelievable.* . . . An experienced detective and sergeant that they did not know that . . . you have to specifically request to preserve the video tape.  If in fact there was a confession.  So, *when you say there's no doubt, there's no doubt that the statement was made; there's a lot of doubt.*

(Emphasis added).  In response to the trial court's comments, the State noted that witness credibility is for the finder of fact to determine.

The trial court ultimately deferred ruling on the motion for judgment of acquittal, and Pickersgill rested without presenting evidence.  Pickersgill then renewed his motion for judgment of acquittal.  The court stated that, if it disregarded Pickersgill's alleged admissions, there would be an issue as to whether the State had met its burden, as proximity to narcotics and flight alone are insufficient to prove constructive possession.  In response, the State maintained that "the Court cannot put aside the defendant's admission at this point."

The trial court also expressed concern that only a field test was conducted on the cannabis.  The State responded with case law holding that a positive field test and testimony from an officer experienced in recognizing marijuana is sufficient.  (Mistakenly) noting the absence of testimony that Officer Gomez had specific narcotics training, the court remarked, "*[t]he Judge is supposed to consider the credibility of the witness, the experience of the witness.*"  The State replied that Officer Gomez *had* testified to his narcotics training.  Subsequently, the trial court denied the motion for judgment of acquittal on all counts.

4

The jury retired to deliberate. When the bailiff advised that the jury had reached a verdict, the jury was returned to the courtroom. After the court reviewed the verdict, the court directed the jury back to the jury room. Once the jury exited the courtroom, the court stated that it was "not going to accept the verdict of the jury," and that it was going to "reconsider [its] ruling . . . and . . . grant the defense motion for judgement of acquittal." The court clarified that it was reconsidering the second motion that was made at the conclusion of the defense case.

The court then recited the jury's verdict: guilty as charged on count 1 (possession of THC) and count 3 (resisting without violence), and guilty of the lesser included offense of possession of cannabis on count 2. The jury was polled, and the verdict was confirmed. Subsequently, the trial court entered a felony judgment of acquittal on all counts. This appeal followed.

**Analysis**

*A. This Court's Jurisdiction*

Pickersgill's sole argument in his answer brief is that this court lacks jurisdiction over the State's appeal. Pickersgill acknowledges that the State's ability to appeal is statutory, and the State may appeal "[a] ruling granting a motion for judgment of acquittal *after a jury verdict.*" § 924.07(1)(j), Fla. Stat. (2018) (emphasis added); *see also* Fla. R. App. P. 9.140(c)(1)(E). However, Pickersgill submits that because the trial court granted his motion for judgment of acquittal before, not after, the jury verdict was recorded, the order granting the motion is not reviewable on appeal. Pickersgill notes the absence of case law expressly defining what "after a jury verdict" means in the context of the statute, but submits that, "under the common law," there is no "jury verdict" until the jury's determination has been "accepted by the trial court and filed with the clerk for recording." We categorically reject this argument.

"The first place we look when construing a statute is to its plain language—if the meaning of the statute is clear and unambiguous, we look no further." *State v. Hackley,* 95 So. 3d 92, 93 (Fla. 2012). "Courts should not construe unambiguous statutes in a manner that would extend, modify, or limit their terms or the obvious implications as provided by the Legislature." *State v. Chubbuck,* 141 So. 3d 1163, 1170 (Fla. 2014); *see also Exposito v. State,* 891 So. 2d 525, 528 (Fla. 2004) (when construing a statute, this court "must give the statutory language its plain and ordinary meaning, and is not at liberty to add words . . . that were not placed there by the Legislature") (citations and internal quotation marks omitted).

5

The plain language of section 924.07(1)(j) provides that the State may appeal from a ruling granting a motion for judgment of acquittal "after a jury verdict." *See State v. Hartzog,* 575 So. 2d 1328, 1331 (Fla. 1st DCA 1991) ("Section 924.07(1)(j) expressly authorizes the state to appeal from a ruling following a jury verdict. Obviously, if the words of a statute are unambiguous, judicial interpretation should not displace the clearly stated intent."). The plain language of section 924.07(1)(j) does not state "after a jury verdict *has been recorded,*" "after a jury verdict *has been rendered,*" "after a jury verdict *has been published,*" "*after the discharge of the jury,*" or contain any other such qualifying language.

By contrast, in cases in which our courts have dismissed State appeals from judgments of acquittal, it was clear that the acquittal was entered before the jury had reached a verdict. *See, e.g., State v. Stone,* 42 So. 3d 279 (Fla. 4th DCA 2010) (dismissing State's appeal where the judgment of acquittal was entered immediately after the State rested its case (i.e., before the jury even had a chance to deliberate)); *State v. Lundy,* 233 So. 3d 1252, 1253 (Fla. 3d DCA 2017) (order granting a renewed motion for judgment of acquittal was not appealable, as it was entered after the "jury could not reach a verdict, and the court declared a mistrial"). None of the cases cited by Pickersgill as authority for his construction of "after a jury verdict" involved section 924.07(1)(j)—they all involved situations where there was a defect in the jury's verdict, in the manner of delivering the verdict, in the verdict form, or in the jury's deliberations.

Further support for our rejection of Pickersgill's creative interpretation of "after a jury verdict" is found in the trial transcript. At the conclusion of the defense's case, the trial court had denied the defense's motion for a judgment of acquittal. The case was subsequently sent to the jury. When the jury returned, the bailiff announced "[t]hey have a verdict." The jury foreperson answered "yes" in response to the trial court's question "Ladies and gentlemen, have you reached a verdict?" The trial court next asked the bailiff to "get the verdict and bring it to the Court." The trial court then announced "[a]t this time the Court is not going to accept the verdict of the jury." The court later declared that it was "reject[ing] the jury's verdict." Clearly, the trial court believed that, prior to the rendering of its "judgment notwithstanding the verdict," a verdict had been rendered by the jury. This belief is reasonable, and a contrary conclusion finds support only by impermissibly adding modifying language to the pertinent statute.

Here, the State's appeal is authorized, where the order of acquittal was granted after the jury had deliberated and returned a verdict to the trial court on all charges. As the requested relief is to reverse and simply reinstate the jury verdict, double jeopardy is not implicated. *See State v.*

6

*Lee*, 230 So. 3d 886, 887 (Fla. 4th DCA 2017) ("No double jeopardy issue arises [from the State's appeal] because, if there is a reversal, all that is necessary is a reinstatement of a verdict, not a retrial.") (citation omitted).

### B. Merits

The State argues the trial court erred in granting the motion for judgment of acquittal because there was competent substantial evidence to establish each element of the crimes charged, and the weight of the evidence and credibility of witnesses were questions solely for the jury. In his answer brief, Pickersgill does not address the merits of the State's argument. We have de novo review. *Lee*, 230 So. 3d at 887 (internal citation omitted).

"In moving for a judgment of acquittal, a defendant admits the facts in evidence and every conclusion favorable to the adverse party that may be fairly and reasonably inferred from the evidence." *Turner v. State*, 29 So. 3d 361, 364 (Fla. 4th DCA 2010). The existence of contradictory or conflicting evidence "does not warrant a judgment of acquittal because the weight of the evidence and the witnesses' credibility are questions solely for the jury." *Fitzpatrick v. State*, 900 So. 2d 495, 508 (Fla. 2005); *see also State v. Konegen*, 18 So. 3d 697, 700 (Fla. 4th DCA 2009). Furthermore, "[t]he testimony of a single witness, even if uncorroborated and contradicted by other State witnesses, is sufficient to sustain a conviction." *Strouse v. State*, 932 So. 2d 326, 328 (Fla. 4th DCA 2006) (citation omitted). In other words, "[w]here there is room for a difference of opinion between reasonable men as to the proof of facts from which the ultimate fact is sought to be established," the conflicting testimony should not be determined on a motion for judgment of acquittal. *Darling v. State*, 808 So. 2d 145, 155 (Fla. 2002).

Here, the trial court's comments during the discussion which transpired on the record upon Pickersgill's motion for judgment of acquittal demonstrate that the court improperly weighed the evidence and made credibility determinations, which are the sole province of the jury. *See Fitzpatrick*, 900 So. 2d at 508. It was reasonable and acceptable for defense counsel to emphasize the State's failure to preserve the video of the officer's questioning of Pickersgill and the latter's confessions to the officers, in calling the credibility of the officers' testimony into question. This was buttressed by the trial court's exclamation that, due to lack of the video, "there's a lot of doubt" that Pickersgill confessed. However, there is no law—constitutional, statutory, or even judge-created—that either precludes law enforcement officers from testifying as to a defendant's confessions without accompanying video or audio recordings of the

confessions, or that prohibits the jury from weighing the credibility of that testimony.

When the testimony of the arresting officers is considered, it is clear the State presented competent substantial evidence to support every element of the crimes charged.

To convict Pickersgill of possession of THC, the State had to prove that he actually or constructively possessed some amount of the controlled substance. § 893.13(6)(a), Fla. Stat. (2018). Actual possession is established if the substance is found on the defendant's person or is "within his 'ready reach' and under his control." *McKire v. State*, 252 So. 3d 413, 415 (Fla. 1st DCA 2018) (citation omitted). Constructive possession is established by showing that "[the defendant] knew of the presence of the contraband on or about [the] premises and had the ability to maintain dominion and control over it." *Id.* (citation omitted).

Here, the forensic tests revealed that the substance was THC. And, in moving for a judgment of acquittal, Pickersgill did not dispute that the substance was THC. Furthermore, the evidence was sufficient to support a conviction for actual or constructive possession. The THC was found in the glove compartment directly in front of Pickersgill's seat; thus, it was within his "ready reach." Moreover, Pickersgill immediately fled from the vehicle after it was stopped by the officers and later told the officers that "everything" in the vehicle was his—both before and after being read his *Miranda* rights. A written waiver of *Miranda* rights was not required. *State v. Williams*, 386 So. 2d 27, 29 (Fla. 2d DCA 1980) ("[A]lthough obtaining written waivers might be the better practice, it is not required."); *see also Meme v. State*, 72 So. 3d 254, 256-57 (Fla. 4th DCA 2011) (finding possession when the combination of the circumstantial evidence, including the defendant's "ready reach," nervous behavior, and statements were inconsistent with defendant's hypothesis of innocence); *Taylor v. State*, 13 So. 3d 77, 81 (Fla. 1st DCA 2009) (explaining that knowledge and control may be established by the defendant's incriminating statements, actions, or other circumstances).

To prove possession of cannabis with intent to deliver/sell, the State was required to show that 1) Pickersgill possessed with intent to sell or deliver a certain substance; 2) the substance was cannabis; and 3) Pickersgill had knowledge of the presence of the substance. *See* Fla. Std. Jury Instr. (Crim) 25.2; § 893.13(1)(a), Fla. Stat. (2018).

The evidence showed that the substance in the bags and one of the marijuana cigarettes field-tested positive for marijuana. Additionally, both

officers testified that they were trained in identifying narcotics. Our courts have held that "it is not necessary for the state to prove the identity of marijuana by chemical or scientific proof." *See A.A. v. State*, 461 So. 2d 165, 166 (Fla. 3d DCA 1984) ("Testimony on other facts, such as a substance's appearance and smell and the circumstances under which it was seized, can be used to meet the state's burden of proving beyond a reasonable doubt that a substance is marijuana."). These items were found in a backpack directly behind Pickersgill's seat, and thus, were within his ready reach. This, coupled with Pickersgill's post-*Miranda* statements that "everything" in the vehicle was his, demonstrated possession. The intent to sell was demonstrated by his post-*Miranda* statement that he had the marijuana "to sell," and Grier's statement that he was helping Pickersgill "sell the narcotics in the vehicle." The evidence also showed that the marijuana cigarettes were packaged in individual tubes and marked with a sticker. "The quantity or packaging of drugs found in a defendant's possession may indicate an intent to sell." *Valentin v. State*, 974 So. 2d 629, 630 (Fla. 4th DCA 2008).

Finally, to prove Pickersgill resisted a police officer without violence, the State was required to show that "(1) the officer was engaged in the lawful execution of a legal duty; and, (2) the actions of the defendant obstructed, resisted or opposed the officer in the performance of that legal duty." *Jackson v. State*, 192 So. 3d 541, 542 (Fla. 4th DCA 2016) (citation omitted). Generally, "flight, standing alone, is insufficient to form the basis of a resisting without violence charge." *Brown v. State*, 199 So. 3d 1010, 1012 (Fla. 4th DCA 2016) (quoting *C.E.L. v. State*, 24 So. 3d 1181, 1186 (Fla. 2009)). However, if the individual flees while knowing of the officer's intent to detain him, and the officer is justified in detaining the individual before he flees, the individual is guilty of obstructing an officer without violence. *See Brown*, 199 So. 3d at 1012-13; *J.L.H. v. State*, 990 So. 2d 686, 687 (Fla. 2d DCA 2008). Here, Pickersgill did not dispute that Gomez was an officer, and Gomez testified that he commanded Pickersgill to "stop" multiple times.

Finally, regarding whether Gomez was in the execution of a legal duty, the evidence showed that there was a lawful traffic stop, based on both the failure to yield in making a U-turn and failure of both the driver and front seat passenger to wear seatbelts. *See* §§ 316.1515 & 316.614(4)-(5), Fla. Stat. (2018); *see also State v. Y.Q.R.*, 50 So. 3d 751, 752 (Fla. 2d DCA 2010) ("[A] U-turn can amount to a traffic offense if it interferes with traffic or cannot be made safely."); *State v. Allen*, 978 So. 2d 254, 255 (Fla. 2d DCA 2008) ("Police may stop a vehicle if the officer has a well-founded, articulable suspicion that the occupant has committed a traffic offense."). Pickersgill was cited for not wearing a seat belt and, although he was a

passenger in the vehicle, he could still be detained for the duration of the traffic stop. *See Presley v. State*, 227 So. 3d 95, 96 (Fla. 2017) (holding that "law enforcement officers may . . . detain the passengers of a vehicle for the reasonable duration of a traffic stop . . . .").

## Conclusion

We reverse the trial court's post-verdict judgment of acquittal, and remand with instructions to reinstate the jury's verdict and conduct sentencing.

*Reversed and remanded for further proceedings.*

TAYLOR and MAY, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***